## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA BARNES,

      Plaintiff,

v.

TELASSISTANT LLC d/b/a ABBY
CONNECT,

      Defendant.

Case No.:  25-357

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES the Plaintiff, Linda Barnes, by and through her attorney, David M. Manes, Esq. of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I.    Nature of the Action

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq*., and the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 623. Plaintiff alleges that she was subjected to discrimination on the basis of her age and sex.

### II.    Jurisdiction and Venue

2. This action arises under Title VII and the Pennsylvania Human Relations Act. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action

is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5.  Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations under Title VII and the ADEA on January 17, 2025, under charge number 533-2025-00944. *See Exhibit 1.*

6.  Plaintiff was mailed a Right to Sue from the EEOC on September 23, 2025. This complaint has been filed within ninety (90) days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2.*

### III.    Parties

7.  Plaintiff, Linda Barnes, is an adult individual with a primary residence located at 740 Drexel Avenue, Johnstown, Pa 15905.

8.  Defendant, Telassistant LLC d/b/a Abby Connect ("Defendant"), is a Nevada Limited Liability Company with a regular place of business located at 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145.

### IV.    Facts

9.  Plaintiff was hired by Defendant on or about April 8, 2024 as the Vice President of Sales and Marketing.

10.  Plaintiff was promised a raise within 6 months of employment and was informed there was a lot of room for growth within the company.

11.  On December 11, 2024, Plaintiff finalized and delivered plans for the sales and marketing department for 2025.

12.  In the plans, Plaintiff included the raise that was discussed and promised to her.

13. In addition, she also included a suggestion for placing a younger male sales representative on a Personal Improvement Plan ("PIP").

14. Plaintiff had hired this employee.

15. He hit his sales goal the first month of employment, but didn't hit the goal after that.

16. When this sales representative first realized that he was going to start being held accountable for not meeting his goals, he began calling the CEO, Nathan Strum, and other leadership.

17. This employee complained about Plaintiff, stating that she was being too harsh with him and he was fearful for his job.

18. Plaintiff was called into a meeting with Strum and Human Resources.

19. During this meeting, Plaintiff was threatened with termination.

20. Plaintiff was placed on a 1-day administrative leave while a "formal investigation" was conducted.

21. After the investigation, Plaintiff was informed that everything was alright and was thanked for her thorough response to the complaints against her.

22. There was no evidence that Plaintiff was being harsh or unsupportive to any members of her team.

23. There were no further discussions on this matter.

24. At this point in Plaintiff's employment, she had perfect employee reviews.

25. There were also emails from Strum to Plaintiff praising her for her communication style and the great team she had built.

26. As a result of the sales representative's complaints, Plaintiff requested to have every meeting with him recorded, to protect her against further false claims.

27. Strum told Plaintiff that that wasn't the "Abby way" and to "just let it go."

28. After this, Strum forced Plaintiff to lower the sales representative's goals significantly.

29. Plaintiff was also told to give him an incentive of a racing school experience if he hit his Quarter 4 goals.

30. Instead of reprimand for lying about Plaintiff, he was being offered a reward.

31. This employee was unable to hit the lowered sales goals.

32. Every time Plaintiff tried to coach him to help his performance, he would complain to Strum.

33. Plaintiff had been previously forced to fire an older female employee for not hitting goals.

34. Plaintiff wasn't allowed to place her on a PIP.

35. Strum instructed Plaintiff to terminate this employee the same day Plaintiff discussed putting her on a PIP.

36. The treatment between a young male employee and older female employee in the same position was distinctively different.

37. While another employee was resigning, she informed Plaintiff that the head of HR and the Vice President of Operations didn't like Plaintiff, repeatedly spoke negatively about Plaintiff, and would roll their eyes if Plaintiff was mentioned.

38. The employee that resigned was the only employee of Plaintiff's that worked in the office.

39.     She resigned due to the unprofessional behavior she witnessed, including the head of HR speaking negatively about her and other members of the team while she was in the office.

40.     Apart from Strum's mother, Plaintiff was the oldest employee at the time these events took place.

41.     When Plaintiff first met Strum in person, he said "wow, you look so much younger in person."

42.     Plaintiff was treated differently than younger employees and held to extremely different communication standards.

43.     Plaintiff witnessed younger male employees receiving different treatment than female employees, especially older female employees.

44.     The only other older female employee on leadership was in constant fear of losing her job and had expressed that to Plaintiff often.

45.     Austin Watson, a younger male employee, was making lewd comments and references to the female employees about his Tinder dates he was having while we were on a work trip in Vegas.

46.     Watson also shared his Tinder profile with Plaintiff's direct reporter, Ashley.

47.     He drank excessively in front of Plaintiff and other team members during a team dinner.

48.     Plaintiff was not permitted to speak with Watson regarding either problem.

49.     Plaintiff was reprimanded for speaking with Watson about why he hadn't shown up to work the one day.

50.     Watson had been out on a Tinder date and had broken his phone. So he was a no-call no-show.

51.    Watson also referred to Plaintiff as "auntie" because of her age.

52.    He also called the VP of Strategic Partnerships, Lisa Snyder, "auntie" due to her age.

53.    Plaintiff took a screenshot this and showed it to Strum and HR. Nothing was done about it.

54.    While Plaintiff was being terminated, she was reprimanded for asking Watson where he was. He was to be in the office every day while on the work trip.

55.    After Plaintiff's termination, Watson was promoted in his work duties.

56.    A Sales Tech Vendor saw Plaintiff's title on LinkedIn and told her that he was contacted by Watson to get a quote on some new sales tech and that Watson was tasked with upgrading the sales tech stack.

57.    That was Plaintiff's job duty, or the Senior Director of Sales, not a sales representative.

58.    The Tuesday before Plaintiff was terminated, she had a one-on-one meeting with her boss.

59.    There wasn't a mention about Plaintiff having an issue with anyone.

60.    That Wednesday, Plaintiff was in a 2-hour leadership meeting with the entire team.

61.    Everyone was excited about the holidays and Plaintiff's plans for 2025.

62.    Wednesday evening, Plaintiff spoke to Strum and finalized the plans for 2025.

63.    Plaintiff gave him a Christmas gift that she had gotten him.

64.    Thursday, December 12, 2024, Plaintiff was called into a Microsoft Teams meeting and terminated.

65. Shantel Tatum, an older female employee, was terminated five days before Christmas.

66. She was not given the same time and training to boost sales as the younger male employees were given.

67. On January 11, 2025, Ashley Brandt, the Digital Marketing Director Plaintiff hired, was terminated over a text message after telling Strum that Watson wasn't doing his job.

68. Instead of disciplining the male employee who wasn't doing his job, Strum fired the female employee while she was dealing with a potential evacuation due to the fires in California, where she was living at the time.

69. After Plaintiff's termination, Ashley Carter, Senior Director of Marketing resigned from her position due to the toxicity towards females.

70. Defendant claimed Plaintiff signed a non-disclosure and non-compete agreement.

71. When she asked for copies of the alleged agreements, she received a Cease-and-Desist letter from the Defendant's attorney.

72. Plaintiff is aware that she signed a non-disclosure agreement, but did not sign a non-compete.

73. However, a former male employee quit and went to a direct competitor. Respondent had no problem with the male going to a competing company.

## COUNT I
### Sex Discrimination in Violation of Title VII

74. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

75. Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive

any individual of employment opportunities ... because of such individual's…sex." 42 U.S.C. § 2000e–2(a)(2).

76.    A plaintiff must first establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015) (citing Mandel v. M & Q Packing Corp., 706 F.3d 157, 169 (3d Cir. 2013)).

77.    A plaintiff must first establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class, (2) she was qualified for the position she sought to attain or retain, (3) she suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015) (citing Mandel v. M & Q Packing Corp., 706 F.3d 157, 169 (3d Cir. 2013)).

78.    Plaintiff's protected class is her sex/gender.

79.    Plaintiff was fully qualified for the position with Defendant.

80.    Plaintiff was treated in such a way that male employees were not.

81.    Plaintiff suffered damages as a result of the discrimination including lost wages and emotional distress.

82.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

<u>**COUNT II**</u>
**Sex Discrimination in Violation of the PHRA**

83.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

84.    Defendant engaged in discriminatory conduct in violation of the PHRA allowing the known sex discrimination to take place and to continue by allowing inappropriate comments to take place, treating females different than male employees, and failing to remedy the situation.

85.    Plaintiff suffered damages as a result of the discrimination including lost wages and emotional distress.

86.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III

**Age Discrimination in Violation of the Age Discrimination in Employment Act**

87.    The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

88.    Plaintiff is over forty (40) years of age at all times relevant to this Complaint, and is of a protected class pursuant to the provisions of the ADEA.

89.    Defendant engaged in unlawful discrimination in violation of the ADEA by discriminating against Plaintiff due to her age.

90.    As a direct and proximate result of Defendant's discriminatory actions in violation of the ADEA, Plaintiff has lost wages and other economic benefits.

91.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests that this Honorable Court enter judgment in her favor, and against the Defendant, and award all damages available at law and in equity, including: economic damages for back and front wages, compensatory damages for emotional distress, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other such relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ David M Manes
David M. Manes, Esq.
PA ID No. 314661

**MANES & NARAHARI, LLC**
One Oxford Centre
301 Grant St, Suite 270
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
dm@manesnarahari.com

## <u>VERIFICATION</u>

I, Linda Barnes, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

10/10/2025

Date

Linda Barnes